UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAEWOO LOGISTICS CORP. | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | C.A. NO. 4:15-cv-1098 |
| | § | |
| NUSTAR ENERGY SERVICES, INC., | § | |
| PETRO-OCEAN TRADING CO., | § | |
| LTD. and GLENCORE LTD. | § | |
| | § | |
| Defendant. | § | |

PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Daewoo Logistics Corp. ("Daewoo"), files this, its Original Complaint, against defendants NuStar Energy Services, Inc. ("NuStar"), Petro-Ocean Trading Co., Ltd. ("Petro-Ocean"), and Glencore Ltd. ("Glencore"), and would show the Court as follows:

PARTIES

1.      Daewoo is a foreign business entity with its principal office and place of business located at 17th Floor, Daewoo Foundation Bldg., 18 Toegye-no, Jung-gu, Seoul, Korea 100-740.

2.      NuStar is a foreign corporation organized and existing under the laws of the state of Delaware, whose principal office and place of business is located at 19003 IH-10 West San Antonio, Texas 78257.  NuStar is authorized to do business within the State of Texas and, at all times material, did business in Texas as a provider of bunker fuel, entering into contracts for the sale/supply of bunker fuel and/or other contracts that were performable in whole or in part in Texas, and/or committing a tort within the State of Texas.  NuStar may be served with process by serving its registered agent for service of process, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

3.      Petro-Ocean is a foreign business entity with its principal office located at 1102, King's Garden 4 Danji, 23 Saemunan-no 3-gil, Jongo-gu, Seoul, Korea (Zip 110-873).  At all times material, Petro-Ocean did business in Texas as a provider of bunker fuel, entering into contracts for the sale/supply of bunker fuel and/or other contracts that were performable in whole or in part in Texas, and/or committing a tort within the State of Texas.  Petro-Ocean may be served with process by any applicable method under the Hague Convention on Service Abroad of Judicial or Extrajudicial Documents.

4.      Glencore is a foreign business entity with its principal office at Three Stamford Plaza, 301 Tresser Boulevard, Stamford, Connecticut 06901.  Glencore is authorized to do business within the State of Texas and, at all times material, did business in Texas as a provider of bunker fuel, entering into contracts for the sale/supply of bunker fuel and/or other contracts that were performable in whole or in part in Texas, and/or committing a tort within the State of Texas.  Glencore may be served with process by serving its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

5.      The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1333 as Daewoo asserts breach of maritime contracts and maritime torts.  This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

6.      Venue for this civil action is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of Texas.

## FACTS

7.      Daewoo alleges, and will prove at trial, that the defendants produced, manufactured, stored, sold, supplied, and/or delivered unfit, non-conforming, off-specification, or otherwise bad bunker fuel to the M/V AGIA IRINI (the "Vessel").  This bad fuel caused significant damage and performance problems to the Vessel.  Despite due demand, Daewoo's claims against defendants remain unresolved, necessitating this lawsuit.

8.      In 2014, Daewoo chartered the Vessel from Meadway Shipping Singapore Pte. Ltd.  ("Meadway").  The Vessel was delivered to Daewoo on March 8, 2014 and redelivered to Meadway on May 17, 2014.  The charter party agreement between Daewoo and Meadway provided that Daewoo was to redeliver the Vessel with the same quantity, quality, and grades of bunkers that were provided at the time of delivery.

9.      On May 2, 2014, Daewoo, as buyer, entered into an agreement with Petro-Ocean, as seller, by which Petro-Ocean agreed to supply 580 metric tons of bunker fuel of the following grade/specification to the Vessel: "380CST(RMG380)."

10.     Petro-Ocean represents itself as a specialist supplier of marine fuels and lubricants on a world-wide basis.  It was therefore reasonable for Daewoo to rely on Petro-Ocean's representations that the fuel supplied would be within the referenced and agreed specification.  It was not.  According to Daewoo and Petro-Ocean's agreement, the fuel was to be delivered on or about May 8-9, 2014 by its supplier, NuStar.  Daewoo alleges upon information and belief that NuStar initially purchased the subject fuel from Glencore.

11.     On May 14, 2014, a barge supplied about 580 metric tons of unfit, non-conforming, off-specification, or otherwise bad bunker fuel (hereinafter "bad fuel") to the Vessel while she was at City Dock 16, Houston, Texas.   The bad fuel was delivered into Vessel fuel oil

tanks 1 Port and 1 Starboard, which were empty.  Four samples were taken from the Vessel's continuous drip sampler at this time, with one sample for the Vessel, two samples for the supplier, and one sample per MARPOL.  On that same day, NuStar—the supplier—issued a Marine Fuel Delivery Note (the "Delivery Note") memorializing delivery of 580 metric tons of IFO 380 bunker fuel to the Vessel.  The Delivery Note references the four fuel samples and their corresponding seal numbers as follows: 3468683 (Ship Sample); 3468682 (NuStar Sample); 3468681 (NuStar Sample); and 3468684 (MARPOL Sample).  Like Petro-Ocean, NuStar agreed and warranted that the fuel would meet certain marine quality fuel standards: RMG 380.

12.    On May 16, 2014, the Vessel departed Houston for Santo Tomas, Guatemala to load a cargo of nickel ore.  On May 18, 2014, the Vessel began to burn the bad fuel from the 1 Port and 1 Starboard tanks *via* the settling tank.  On May 20, 2014, the Vessel arrived in Santo Tomas and began loading the nickel ore.  On May 24, 2014, the Vessel departed Santo Tomas for the Ukraine.  On May, 26, 2014, the Vessel's No. 1 generator failed and the No. 3 generator was started.  On May 27, 2014, the No. 3 generator failed to start and excessive clearances in the plunger barrels were reported.  On May 29, 2014, the Vessel experienced issues with the main engine's turbocharger and the main engine suddenly stopped.  The fuel injectors were observed with clogged nozzles and worn spindles.  Fuel injectors one through six were then replaced.

13.    On May 30, 2014, the Vessel switched fuels and began to burn LSFO—as opposed to the bad fuel—but, notwithstanding, the main engine stopped again.  The fuel pumps and suction valves were then removed and cleaned.  On May 31, 2014, the Vessel again experienced a failure of its main engine, and also its auxiliary engines.

14.    On June 1, 2014, the Vessel deviated to St. Eustatius to load fresh bunkers, arriving on June 4, 2014.  Port State Control in St. Eustatius detained the Vessel because it was

carrying excessive sludge produced during burning of the subject bad fuel provided by defendants and the requisite overhaul procedures that followed.  While in St. Eustatius, various samples of the subject bad fuel were obtained.  Thereafter, the Vessel called at St. Maarten to dispose of the excess sludge.

15.     On June 24, 2014, Dixie Services, Inc. ("Dixie") in Houston, Texas analyzed samples of the subject bad fuel, including Sample No. 3468683, which is referenced in NuStar's Delivery Note and was retained by the Vessel.  Dixie's analysis reveals that the bad fuel was contaminated with bio-derived materials in violation of the governing ISO specification.  In addition, the bad fuel was out of specification for potential total sediment.  The analysis established and confirmed that the bad fuel was off-specification and not usable for its intended purposes.  Simply put, the fuel sold to Daewoo was not as represented, contracted, or warranted, and was unusable.

16.     Following the incident, Meadway placed Daewoo on notice of various claims against it under their existing charter party due to the off-specification and contaminated fuel supplied to the Vessel by defendants.  The full extent of Meadway's claim due to problems caused by the bad fuel is yet to be determined.

17.     Daewoo has submitted its demand to NuStar and Petro-Ocean with respect to damages incurred by their failing to sell and supply IFO 380 meeting the proper and contracted specifications.  However, despite these demands, NuStar and Petro-Ocean have not compensated Daewoo.

18.     Daewoo was without fault in causing and/or contributing to the damages asserted in this Original Complaint.  The contamination was legally caused solely by the acts, omissions, or other conduct of one or more of the defendants, or by their breaches of then existing contracts.

The source of all damages, costs, and expenses incurred by Daewoo is the defendants' provision of out of specification, unsuitable, substandard, defective, contaminated, and/or bad fuel.

## COUNT I

### BREACH OF CONTRACT

19.     Daewoo repeats and re-alleges each and every paragraph and allegation in the preceding paragraphs as if fully set forth herein.

20.     Defendants are engaged in the practice of selling, marketing, transporting, and/or otherwise providing marine fuels to costumers.  By virtue of their agreements with Daewoo, the defendants—NuStar and Petro-Ocean—agreed to provide 380CST(RMG380) bunker fuel, which was to meet certain identifiable and industry-standard specifications.

21.     However, the defendants'—NuStar and Petro-Ocean—provided to and loaded bad fuel that was out of specification, unsuitable, substandard, defective, and/or contaminated to the Vessel in breach of contract.

22.     The foregoing acts or failures to act as contracted by the defendants—NuStar and Petro-Ocean—proximately caused significant damages to Daewoo.  Daewoo hereby seeks recovery of all damages, costs, expenses, interest, and attorneys' fees that have been or may be incurred as a result of defendants' breaches.

## COUNT II

### BREACH OF WARRANTIES/MISREPRESENTATION

23.     Daewoo repeats and re-alleges each and every paragraph and allegation in the preceding paragraphs as if fully set forth herein.

24.     The defendants—NuStar and Petro-Ocean—warranted that the bad fuel would meet certain identifiable and industry-standard specifications.   However, the defendants'

provided to and loaded bad fuel that was out of specification, unsuitable, substandard, defective, and/or contaminated aboard the Vessel in breach of express warranties made and owed by defendants—NuStar and Petro-Ocean—to Daewoo.

25.    Additionally, the defendants' provision and loading of bad fuel that was out of specification, unsuitable, substandard, defective, and/or contaminated aboard the Vessel constitutes a breach of implied warranties, including but not limited to quality and/or fitness for purpose and freedom from harmful defects, made and owed by defendants—NuStar, Petro-Ocean, and Glencore—to Daewoo.

26.    Alternatively, the defendants' provision to and loading of bad fuel that was out of specification, unsuitable, substandard, defective, and/or contaminated aboard the Vessel constitutes a material misrepresentation by the defendants—NuStar and Petro-Ocean—to Daewoo as to the quality and/or fitness for purpose of the fuel, which was relied upon by Daewoo to its detriment.  The defendants knew, or should have known, about the unsuitable, substandard, defective, and/or contaminated condition of the bad fuel.  Daewoo is entitled to relief from the intentional and/or negligent misrepresentation of the quality and nature of the bad fuel.

27.    The bad fuel provided by defendants to Daewoo was not of the quality or condition expressly or impliedly warranted by defendants' description, but was defective as described above.  Alternatively, defendants misrepresented the quality, specification, and/or suitability of the ultimately bad fuel.

28.    Daewoo seeks recovery of all damages, costs, expenses, interest, and attorneys' fees that have been or may be incurred as a direct result of the defendants' conduct.

## COUNT III

## NEGLIGENCE

29.     Daewoo repeats and re-alleges each and every paragraph and allegation in the preceding paragraphs as if fully set forth herein.

30.     The defendants' provision to and loading of bad fuel that was out of specification, unsuitable, substandard, defective, and/or contaminated aboard the Vessel constitutes negligence. The defendants—NuStar, Petro-Ocean, and Glencore—had a duty not to harm Daewoo by loading only suitable fuel aboard the Vessel, and to ensure the fuel loaded upon the Vessel was industry-standard, not defective, and not contaminated.  The defendants' failure to do so was a breach of those duties that proximately caused damages to Daewoo and the Vessel and other related expenses.

31.     Daewoo seeks recovery of all damages, costs, and expenses that have been or may be incurred as a result of the defendants'—NuStar, Petro-Ocean, and Glencore—conduct.

## DAMAGES

32.     Daewoo repeats and re-alleges each and every paragraph and allegation in the preceding paragraphs as if fully set forth herein.

33.     As a result of the acts or failures to act by defendants, out of specification, unsuitable, substandard, defective, contaminated, and/or bad fuel was delivered to Daewoo's Vessel, resulting in significant physical damage, loss of use, fees, and other expenses arising from the Vessel's use and remediation of the bad fuel supplied by defendants.

34.     Daewoo hereby seeks relief for all actual losses, damages, costs, and expenses, including, but not limited to, the cost of replacement fuel, survey and inspection fees, chemical analysis fees, downtime, loss of use/revenue, cleaning and disposal expenses, administrative and

overhead costs, expert fees, pre-judgment and post-judgment interest, attorneys' fees, costs of suit, and all other damages, costs, and expenses arising from the matters herein complained.

## CONDITIONS PRECEDENT

35.     Daewoo has complied with all conditions precedent to the maintenance of all causes of action asserted in this proceeding.

## PRAYER

WHEREFORE, plaintiff, Daewoo Logistics Corp., prays that defendants, NuStar Energy Services, Inc., Petro-Ocean Trading Co., Ltd., and Glencore Ltd., be served with citation and process, and that on final trial or hearing, Daewoo have judgment against defendants as to the damages described herein, jointly and severally, in an amount to be shown at trial of this matter, plus pre-judgment and post-judgment interest, costs of court, attorneys' fees, and such other and further relief to which plaintiff, Daewoo Logistics Corp., may show itself justly entitled.

Respectfully submitted,

By: */s/ David R. Walker*
David R. Walker
Fed I.D. No. 2827
Texas Bar No. 20696800
Richard A. Branca
Fed I.D. No. 828076
Texas Bar No. 24067177
Pennzoil Place, Suite 500
711 Louisiana Street
Houston, Texas   77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945

ATTORNEY-IN-CHARGE FOR PLAINTIFF
DAEWOO LOGISTICS CORP.

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP